# CHARLESTON

## HUDGENS v. SOUTHERN EXPRESS CO.

Submitted September 2, 1914.   Decided September 22, 1914.

1. INTOXICATING LIQUORS—*Shipment—Right to Receive.*

   The statute, Code 1913, ch. 32A, sec. 19, forbids an express company, when it shall have carried a shipment of intoxicating liquors to the point where consigned to the consignee, from delivering the shipment to anyone but the consignee in person.   (p. 762).

2. SAME—*Shipment—Right to Receive—Carriers.*

   A common carrier over whose lines a shipment of intoxicating liquors has not been consigned, but merely in whose care it has been consigned over other lines to a destination point, can not act as the agent of the consignee in receipting for and accepting delivery of the shipment.   (p. 762).

Original proceedings in mandamus by Robert Hudgens against the Southern Express Company.

*Writ of mandamus denied.*

*Anderson, Strother & Hughes,* and *Sanders & Crockett,* for petitioner.

*F. O. Blue* and *Stokes & Sale,* for respondent.

ROBINSON, JUDGE:

Robert Hudgens seeks mandamus to compel the Southern Express Company to deliver to the Flat Top Express Company a shipment of intoxicating liquors consigned to him from

Pocahontas, Va., over the lines of the Southern Express Company, in care of the Flat Top Express Company, at Welch, W. Va. The Southern, in obedience to provisions of the new prohibitory laws of this State, as it avers, refuses to deliver the shipment to the Flat Top. Acts 1913, ch. 13; Code 1913, ch. 32A. It maintains that it can not legally deliver the shipment to anyone but Hudgens in person, and to him only after he shall have personally signed in receipt for the same the record which the law requires the carrier to keep in this regard. On the other hand Hudgens submits that the Flat Top Express Company is a common carrier and may therefore act as his agent in taking over and receipting for the shipment. He refuses to receive it unless he may have it through the agency of that company.

Hudgens lives in a suburb of Welch, about a mile from the office of the Southern Express Company. The office of the Southern at Welch is the nearest of its offices to him. It makes no deliveries therefrom to the residences or business places of consignees, as is the custom of express companies in some towns. The Flat Top Express Company is a newly organized corporation which proposes, at least among other things, to take from the office of the Southern Express Company at Welch shipments of liquors made to that office in its care and to deliver them to the persons whose names appear on them as consignees. In this it proposes to do a delivery business as contradistinguished from an ordinary carrier business; for, the shipments are not consigned over its lines, but simply in its care. A consignment is not made through it, but only to it over other lines.

Plainly in this case it appears that the contract of carriage was with the Southern Express Company only, and was for carriage of liquors from Pocahontas, Va., to the office of the Southern Express Company at Welch, W. Va. This contract the Southern Express Company fulfilled. It was at an end when the consignment reached Welch. True, there was a direction to the carrier by the consignor to deliver the shipment on the arrival of the same at Welch into the care of the Flat Top Express Company when it should request the same on behalf of Hudgens, the consignee. But if the carrier

could not obey that direction without violating the laws of the State, it will not be compelled by mandamus to obey.

We are of opinion that the law forbids an express company, when it shall have carried a shipment of intoxicating liquors to the point where consigned to the consignee, from delivering the shipment to anyone but the consignee in person. Such is the plain import of the statute. Code 1913, ch. 32A, sec. 19. It requires every express company, railroad company, or transportation company to keep a record of its deliveries of shipments of liquors. Following this, it provides that "the consignee shall be required to sign his name *in person* to such record." It clearly contemplates the presence of the consignee himself, not any agent of his, at the time of the delivery. It means that the delivery shall be made by the carrier to the consignee in person. In all this there was reason. Were it otherwise, shipments of liquor would be so promiscuously and irresponsibly distributed as to tend to a defeat of the purpose of the law.

Hudgens maintains that any common carrier may act as agent in the handling of liquors. It is true that section 3 of the act excepts a common carrier from the terms which make it a violation for one to act as the agent of another in the unlawful handling of liquors. Was this meant to except common carriers other than in the ordinary carriage of liquors, duly consigned over their lines? We hold that it was not. The exception can not mean that a common carrier may receipt for a consignment that has not been consigned over its lines, but over other lines, merely in its care at the destination point. That would be inconsistent with the provision of section 19 which we have observed requires the consignee to receipt in person at the destination point for the consignment. The exception in section 3 can not outdo the meaning and purpose of section 19. The last section too clearly provides that when a consignment has been carried to the point to which it was consigned, the consignee shall personally take it over and leave his personal signature on the book which the law requires the carrier to keep. No person or corporation can sign or receipt for him. The statute requires him to do it *in person*. Thus the liquors are traced directly to him, and re-

sponsibility for their presence in the State is not lost through the hands of one or more agents.

The return is all sufficient to bar mandamus, and the writ will be denied.

*Writ of mandamus denied.*